# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, NORTHERN DIVISION
## Knoxville Divisional Office Howard H. Baker, Jr.
## United States Courthouse 800 Market Street
## Suite 130 Knoxville, TN 37902
## Phone: (865) 545-4228

F I L E D

OCT 0 3 2013

October 3, 2013

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

JAMES T. HIGDON, PLAINTIFF )
522 MOUNTAIN PERKINS LANE )
JACKSBORO, TN. 3775 )
423-871-0278 )
) **CASE NO:** 3:13-CV-586
) Collier/Shirley
*Plaintiff (s)* )
)
**V.** )
) **JURY TRIAL DEMANDED**
) **CIVIL COMPLAINT**
)

*Defendant (s)*

STATE OF TENNESSEE,
DEFENDANT (1) Office of the Attorney
General Robert E. Cooper
P.O. Box 20207
Nashville, TN 37202-0207
Telephone: (615) 741-3491
Fax: (615) 741-2009

DISTRICT ATTORNEY'S OFFICE FOR
THE EIGHTH DISTRICT, HEADED BY
LORI PHILLIPS JONES; DEFENDANT
(2), 8th Judicial District DA Office
P. O. Box 10, Howard Baker Hwy.
Huntsville, TN 37756-0010

WILLIAM PAUL PHILLIPS IN HIS
INDIVIDUAL AND OFFICIAL
CAPACITIES AS ATTORNEY
GENERAL, DEFENDANT (3); 8th Judicial
District DA Office
P. O. Box 10, Howard Baker Hwy.
Huntsville, TN 37756-0010

SCARLETT W. ELLIS, IN HER
INDIVIDUAL AND OFFICIAL

CAPACITIES AS ASSISTANCE DA,
DEFENDANT (4) ;); 8th Judicial District
DA Office
P. O. Box 10, Howard Baker Hwy.
Huntsville, TN 37756-0010

HARRY BURDEN, IN HIS INDIVIDUAL
AND OFFICAL CAPACITIES AS
FOREPERSON OF GRAND JURY,
CAMPBELL CO., TN, DEFENDANT (5);
P. O. Box 4
Jacksboro, TN 37757

LAW FIRM OF HALL & HATMAKER,
ALSO KNOWN AS HATMAKER LAW
OFFICE, HEADED BY MICHAEL
GLENN HATMAKER, DEFENDANT (6);
571 Main Street
P. O. Box 417
Jacksboro, TN 37757-0417

MICHAEL GLENN HATMAKER,
INDIVIDUAL AND IN HIS OFFICIAL

CAPACITIES AS ATTORNEY,
DEFENDANT (7) 571 Main Street
P. O. Box 417
Jacksboro, TN 37757-0417


COUNTY OF CAMPBELL COUNTY, TN,
DEFENDANT (8); Joseph G. Coker,
County Attorney, P.O. Box 134
Jacksboro, TN 37757
Phone 423-562-5187

TOWN OF JACKSBORO, TN,
DEFENDANT (9) Mayor, Jack Cannon
585 Main Street, P.O. Box 75
Jacksboro, TN 37757
 (423) 562-9312 [Phone]
(423) 566-8121 [Fax]

DANNY CHAPMAN IN HIS OFFICIAL
CAPACITIES AS CHIEF OF POLICE,
TOWN OF JACKSBORO, TN, Mayor, Jack
Cannon, 585 Main Street,
P.O. Box 75
Jacksboro, TN 37757
 (423) 562-9312 [Phone]
(423) 566-8121 [Fax]
 DEFENDANT (10);

SHANNON DOAH MARLOW, IN HIS
INDIVIDUAL AND OFFICIAL
CAPACITIES AS A FIREMEN IN THE
TOWN OF JACKSBORO, TN,
371 LAKE STREET
LAKE CITY, TN. 37769
DEFENDANT (11);

SHANE GREEN, IN HIS OFFICIAL
CAPACITIES AS FIRE CHIEF IN THE
TOWN OF JACKSBORO, TN,
COURT HOUSE, PROPERTY
ASSESSORS OFFICE
P.O. Box 134
Jacksboro, TN 37757
DEFENDANT (12);

JAMES SKEANS IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES AS
POLICEMEN, IN THE TOWN OF
JACKSBORO, TN,
C/O Mayor, Jack Cannon, 585 Main Street,
P.O. Box 75, Jacksboro, TN 37757,
DEFENDANT (13);

CITY OF LAFOLLETTE, TN,
DEFENDANT (14); Office of the Mayor
207 South Tennessee Avenue
LaFollette, Tennessee 37766
Phone: (423) 562-4961
Fax (423) 562-6565

JOEL GRAYSON CLARK, IN HIS
INDIVIDUAL AND OFFICIAL
CAPACITIES WITH LAFOLLETTE CITY
FIRE DEPARTMENT, DEFENDANT (15);
207 South Tennessee Avenue
LaFollette, Tennessee 37766

VERLIN HATFIELD, IN HIS
INDIVIDUAL AND OFFICIAL
CAPACITIES AS A POLICEMEN, IN
THE, CITY OF LAFOLLETTE, TN (16)
207 South Tennessee Avenue
LaFollette, Tennessee 37766

CITY OF CARYVILLE, TN,
DEFENDANT (17);
Caryville City Municipal Building
Mayor's Office
4839 Old Highway 63
Caryville, TN 37714
(423) 562-9478

BILL WIDENOR, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES AS CHIEF
OF POLICE, IN THE CITY OF
CARYVILLE, TN, DEFENDANT (18);
Caryville City Municipal Building
Mayor's Office
4839 Old Highway 63
Caryville, TN 37714
(423) 562-9478

FRED STAGNOLIA, IN HIS
INDIVIDUAL AND OFFICIAL
CAPACITIES AS POLICE OFFICER,
Caryville City Municipal Building
Mayor's Office, 4839 Old Highway 63,
Caryville, TN 37714
(423) 562-9478, DEFENDANT **(19);**

TENNESSEE WILDLIFE RESOURCES
AGENCY, DEFENDANT **(20)**
P.O. Box 40747
Nashville, Tennessee 37204

BRENT HARRISON, INDIVIDUAL AND
IN HIS CAPACITIES AS TWRA
EMPLOYEE, STATE OF TN,
P.O. Box 40747
Nashville, Tennessee 37204
DEFENDANT **(21)**;

JOHN DOE A, DEFENDANT **22A**, IN HIS
INDIVIDUAL AND OFFICIAL
CAPACITIES, CAMPBELL CO. SHERIFF
DEPT. WORKING APPROX. MAY 26,
2004

JOHN DOE B, DEF. **# 22B**; IN HIS
INDIVIDUAL AND OFFICIAL
CAPACITIES, CAMPBELL CO. SHERIFF
DEPT. WORKING MAY 26, 2004

JANE DOE C, DEF **# 22C;** IN HER
INDIVIDUAL AND OFFICIAL
CAPACITIES, CAMPBELL CO. SHERIFF
DEPT. WORKING MAY 26, 2004 C/O
Campbell County Sheriff Department, P.O.
Box 82, Jacksboro, TN 37757

SHERIFF OF CAMPBELL COUNTY,
ROBBIE GOINS IN HIS OFFICIAL
CAPACITIES' OF SHERIFF OF
CAMPBELL, TN., DEFENDANT **(23).**
Campbell County Sheriff Department
P.O. Box 82, Jacksboro, TN 37757
Phone 423-562-7446

KAMILE BOND (911) DEFENDANT **(24)**
IN HER INDIVIDUAL AND OFFICIAL
CAPACITIES AS EMPLOYEE, IN
CAMPBELL COUNTY, TN,
Campbell County Sheriff Department
P.O. Box 82
Jacksboro, TN 37757
Phone 423-562-7446

JAMES MCCALL, DEFENDANT **(25)**,
(ALLEGED OFFICER OF CAMPBELL
COUNTY). IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES AS EMPLOYEE,
IN CAMPBELL COUNTY, TN,
Campbell County Sheriff Department
P.O. Box 82
Jacksboro, TN 37757
Phone 423-562-7446

CORY CHAPMAN (DEFENDANT **(26)**
(OFFICER OF CAMPBELL COUNTY). IN
HIS INDIVIDUAL AND OFFICIAL
CAPACITIES AS EMPLOYEE, IN
CAMPBELL COUNTY, TN,
Campbell County Sheriff Department
P.O. Box 82
Jacksboro, TN 37757
Phone 423-562-7446

CODY CHAPMAN, DEFENDANT **(27)**
ALLEGED OFFICER OF CAMPBELL
COUNTY, TN. IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES AS
EMPLOYEE, IN CAMPBELL COUNTY,
TN, COURT HOUSE, PROPERTY
ASSESSORS OFFICE, AND SHERIFF
DEPARTMENT, LISTED AS WITNESS
IN INDICTMENT OF RAFAEL ANTONIO
SALINAS CASE # 16269. MAY 28, 2013.
P.O. Box 134
Jacksboro, TN 37757

FRANKLIN AYERS, DEFENDANT **(28)**
OFFICER OF CAMPBELL COUNTY, TN.,

IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, IN CAMPBELL COUNTY, TN, Campbell County Sheriff Department, P.O. Box 82 Jacksboro, TN 37757
Phone 423-562-7446

BILLY MARLOW, ALLEGED NIGHT JAILER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, CCSD, IN CAMPBELL COUNTY, TN, DEFENDANT **(29)**. Campbell County Sheriff Department
P.O. Box 82
Jacksboro, TN 37757
Phone 423-562-7446

JOHN DOE D. DEFENDANT **30D;** IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, CCSD, IN CAMPBELL COUNTY, TN, MAY 28, 2013

JOHN DOE E; DEFENDANT **30E;** IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, CCSD, IN CAMPBELL COUNTY, TN, MAY 28, 2013

JOHN DOE F, DEFENDANT **30F**; IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, CCSD, IN CAMPBELL COUNTY, TN, MAY 28, 2013

JOHN DOE. G, DEFENDANT **30G**, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, CCSD, IN CAMPBELL COUNTY, TN, MAY 28, 2013

JOHN DOE H, DEFENDANT **31H,** IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, CCSD, IN CAMPBELL COUNTY, TN, JULY 22, 2013

JOHN DOE I, DEFENDANT **31I,** IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, CCSD, IN CAMPBELL COUNTY, TN, JULY 22, 2013

JOHN DOE J, DEFENDANT **31J,** IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, CCSD, IN CAMPBELL COUNTY, TN, JULY 22, 2013

JOHN DOE K, DEFENDANT **31K,** IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS EMPLOYEE, CCSD, IN CAMPBELL COUNTY, TN, JULY 22, 2013

## COMPLAINT

1. The Plaintiff, James T. Higdon, Pro Se, complaining of the above-named defendants,

respectfully alleges the following:

## INTRODUCTION

2. Government of Campbell County, Tennessee and the State of Tennessee alleged to be in

violation of: civil conspiracy, criminal conspiracy; fraud upon the court, perverting the

course of justice,[1] false arrest, fraud[2], racketeering[3], breach of good faith, gross

dereliction[4] of duty in a brother work related fraternity; thus being alleged conspiracy[5] in

our judicial system in the 8th judicial district of the State of Tennessee. First Amendment

Rights (Right to Know)[6], Fourth Amendment (search and seizure), Fifth Amendment

(abuse of government in a legal procedure). Tenn. Const. Art. I, & 7 (2013) Sec. 7.

Unreasonable searches and seizures – General warrants, TCA 39-14-405 (Criminal

Trespass), TCA 39-14-406 (Aggravated criminal trespass), Sixth Amendment (Nature

and Cause of the accusations against him), Tort, Aggravated Assault, Formation of a

Grand Jury Foreperson and the compensation paid to a Foreperson, etc. (Rule 6, TN R.

Crim. P., and Federal Rules of Procedure Rule 6, Appointment of the Grand Jury), Fraud

upon the Court has no statute of limitation, this being a continuance; and Individuals

listed above to be personally in violation of Civil action for deprivation of rights, who

---

[1] Perverting the course of justice, is a criminal offence in which someone prevents justice from being served on himself or on another party. It is a common law offence carrying a maximum sentence of life imprisonment. fabricating or disposing of evidence, conspiring with another to pervert the course of justice, and intending to pervert the course of justice.

[2] Criminal law, fraud is intentional deception made for personal gain or to damage another individual; the related adjective is fraudulent, and verb is defraud. Fraud is a crime and a civil tort at common law, though the specific criminal law definition varies by legal jurisdiction. Defrauding people or entities of money or valuables is a common purpose of fraud. Fraud is a basis for equitable jurisdiction.

[3] Conspiring to violate the racketeering provisions. 18 U.S.C.
§1962. Racketeering refers to criminal activity that is performed to benefit an organization.... Examples of racketeering activity include extortion,... obstruction of justice and bribery. The Racketeer Influenced and Corrupt Organizations (RICO).

[4] law deliberate neglect of duty or obligations.

[5] A conspiracy theory ---- is an explanatory proposition that accuses two or more people, a group or an organization of having caused or covered up, through deliberate collusion, an event or phenomenon of great social, political, or economic impact.

[6] ......as to the non-contemporaneous justification, there should be disclosure.....the court also emphasized "the common law tradition of contemporaneous disclosure of individualized arrest information in order to prevent secret arrests. County of Los Angeles v. Superior court, 18 Cal. App. 4th, 588, 598 (1993).

under the color of any statute, ordinance, regulation, custom, secured by the Constitution (48 USC§ 1983, 28 UCS§§ 1331, 1343 (3 & 4), 28 USC §1367).

## JURISDICTION

3. Jurisdiction is founded upon the existence of Federal Question. 28 USC §1331.

4. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United states pursuant to 42 U.S.C. § 1983 as Well as pursuant to the common law of the State of Tennessee.

5. Jurisdiction is founded upon 28 U.S.C. § 1343(3 & 4).

6. That this Court has jurisdiction to hear plaintiff's state claims pursuant to 28 U.S.C. § 1367.

7. Jurisdiction is further conferred upon this Honorable Court and is founded upon the Declaratory Judgment Act, 28 U. S. C. §§ 2201, 2202. This being a civil action seeking equitable and declaratory relief, vindicating the privileges, and immunities guaranteed to the Plaintiff by the Constitution of the United States.

## VENUE

8. Venue is appropriate pursuant to 28 U.S.C. § 1391 (b) (1 & 2).

## STATUTE OF LIMITATION,

9. THE CONTINUING DOCTRINE: The "continuing violation" doctrine overrides the

statute of limitations. This is an exception to the statute of limitations, which sets the
maximum period which one can wait before filing a lawsuit. The doctrine relieves a
plaintiff of a limitations bar if he/she can show a series of related acts to him/her, one or
more of which falls within the limitations period. Pegram v. Honeywell, Inc., 361 F.3d
272, 279 (5th Cir. 2004).

10.   Wikipedia, the free encyclopedia: In the United States, when an officer of the court is
found to have fraudulently presented facts to court so that the court is impaired in the
impartial performance of its legal task, the act, known as "fraud upon the court", is a
crime deemed so severe and fundamentally opposed to the operation of justice that it is
not subject to any statute of limitation.

11.   In Bulloch v. United States,[2] the court stated "Fraud upon the court is fraud which is
directed to the judicial machinery itself and is not fraud between the parties or fraudulent
documents, false statements or perjury. ... It is where the court or a member is corrupted
or influenced or influence is attempted or where the judge has not performed his judicial
function --- thus where the impartial functions of the court have been directly corrupted."

## PARTIES

12.   Plaintiff James T. Higdon is a resident of the United States of America, residing within
the County of Campbell , the City of Jacksboro, and State of Tennessee.

a.   Resident of Campbell County 64 years.

b.   Bachelor of Science Degree from the University of Tennessee.

c.   Married 40 years, 4 children, 3 grandsons, 2 granddaughters.

d.   Defendant date of birth February, 26, 1949.

e. Member of the United Methodist Church in Jacksboro, 40 years.

13. Defendant (1) State of Tennessee is a governmental entity organized and existing pursuant to the laws of the United States Constitution and State of Tennessee Constitution. Receiving supervising agent for Federal, State, County, and City monies. Defendant (1) is sued in its official capacity only.

14. Defendant (2) District Attorney's Office for the Eighth District, previously Headed by William Paul Phillips (at present headed by Lori Phillips Jones), is a governmental entity organized and existing pursuant to the laws of the State of Tennessee, and expanding over several counties. Main office is located in Huntsville, TN 37756; Defendant (2) is sued in its official capacity only.

15. Defendant (3) William Paul Phillips previously elected District Attorney for the Eight District including Campbell County, TN. Defendant (3) is sued in his individual and previously official capacities.

16. Defendant (4) Scarlett W. Ellis is Assistance District Attorney, and employed by the District Attorney for the Eighth District including Campbell County, in the State of Tennessee. Defendant (4) is sued in her individual and official capacities.

17. Defendant (5) Harry Burden citizen, resident of Campbell County, Tennessee, was previous foreperson of the Grand Jury in Campbell County, TN, approximately thirty-nine (39) years.

a. Served as a founding father and council member for the Town of Jacksboro, many years.

b. His son, Avery Burden, now serves as council member in the Town of Jacksboro, and his brother, Bob Burden, serves as Board Member of Caryville Jacksboro Utility Commission.

c. One (1) board member out of a total three (3) members are appointed by the Town of Jacksboro and entity owned by the Town of Jacksboro and the City of Caryville, TN jointly.

d. This Defendant (5) is sued in his individual and official capacities.

e. Harry Burden heads a car repair body shop on the Appalachian Highway in the Town of Jacksboro.

f. Mr. Burden fixes or repairs the Town of Jacksboro police and utility vehicles;

g. Mr. Burden serviced as foreperson on the Grand Jury in all four (4) cases of the Plaintiff, CR11665, CR12296, CR13153, CR12158, case CR11665 pending in appeal.

h. Mr. Burden has known plaintiff and plaintiff's family for over 64 years.

i. Mr. Burden's family and the plaintiff's family have had close relationships their entire life.

j. Mr. Burden also, has close relationships with all Judges, Attorneys, and the District Attorney, Paul Phillips, this relationship enables him to stay as foreperson of the Grand Jury, draw a salary, retirement, and to have community influence.

18. Defendant (6) Law Firm of Hall and Hatmaker, also known as Hatmaker Law Office, is headed by Michael Glenn Hatmaker; this is a private entity located at 571 Main Street, Jacksboro, TN. Defendant (6) is sued in its official capacities only.

19. Defendant (7) Michael Glenn Hatmaker, an alleged attorney, licensed in TN since 1977, Year of Birth, 1951, BPR Number: 005391, located at 571 Main Street, Jacksboro, Campbell County, TN. This Defendant (7) is sued in his individual and in his official capacities.

20. Defendant (8) County of Campbell County, TN a governmental entity organized and existing pursuant to the laws of the State of Tennessee. Defendant (8) Campbell County, Tennessee is sued in its official capacity only.

21. Defendant (9) Town of Jacksboro, TN a governmental entity organized and existing pursuant to the laws of the State of Tennessee and Campbell County, TN. Defendant (9) Town of Jacksboro is sued in its official capacity only.

22. Defendant (10) Danny Chapman is Chief of Police, employed by Town of Jacksboro, TN in Campbell County, TN. This Defendant (10) is sued in his official capacity only.

23. Defendant (11) Shannon Doah Marlow a fireman previously employed by Town of Jacksboro, TN in Campbell County, TN. This defendant (11) is sued in his individual and in his official capacity as a fireman in the Town of Jacksboro, TN.

24. Defendant (12) Shane Green, previously employed in the Town of Jacksboro, TN as Fire Chief.

    a.  At the present time he is working in the Property Accessor's Office in Campbell County, TN.

b. Previously employed by the Campbell County Sheriff's Department, and the Town of Jacksboro police department.

c. He has never been POST[7] Certified

d. He is a convicted felon and served approximately four (4) years in a Federal Prison for violation of Lester Eugene Siler civil rights, Case 3:05-cr-00013.

e. This Defendant (12) is being sued in his official capacities only.

25. Defendant (13) James Skeans an alleged police officer in the Town of Jacksboro. This Defendant (13) is being sued individually and in official capacities.

a. Defendant (13) was making DUI arrest under the color of statute for the Town of Jacksboro, TN not being a POST certified police officer, acting alone, admitted giving sobriety test he knew nothing about, taking blood samples, carrying a gun, while officially being listed working for the Campbell County Sheriff's Department; position unknown; Fraud, Perjury, Tort, Fraud upon the court, Criminal trespassing, etc; Violation of numerous T.C.A. statutes.

b. On May 28, 2013 Sheans came on Plaintiff's property for three one-half hours, going between two no trespassing signs and a gate and entering the home without any type of warrant; and never notified the plaintiff he was there, and left house wide open.

---

[7] **POST, TENNESSEE PEACE OFFICER STANDARDS AND TRAINING COMMISSION CHAPTER 1110-2 CERTIFICATION,** *T.C.A. §38-8-105.* **1110-2-.03 LAW ENFORCEMENT OFFICER CERTIFICATION REQUIREMENTS.** All full-time commissioned law enforcement officers employed by an agency required to meet minimum standards must meet pre-employment requirements and, upon completion of the required basic training, will be issued a POST Certification. (1) Full-time Commissioned Law Enforcement Officer Pre-employment Requirements. The Commission shall issue a certificate of compliance to any person who meets the qualifications for employment and satisfactorily completes a POST certified Basic Law Enforcement Training Academy. All persons employed as a full-time law enforcement officer, after July 1, 1982, must be certified by POST and shall comply with the following pre-employment requirements: *T.C.A. §§38-8-104, 38-8-105, 38-8-106, 38-8-107, 38-8-111, and 38-8-111(f).*

26. Defendant (14) City of LaFollette, TN a governmental entity organized and existing pursuant to the laws of the State of Tennessee and Campbell County, TN. Defendant (14) City of LaFollette, TN is sued in its official capacity only.

27. Defendant (15) Joel Grayson Clark previously employed by the City of LaFollette, TN as a fireman. This defendant (15) is being sued in his individual and official capacities.

28. Defendant (16) Verlin Hatfield employed by the City of LaFollette, as an alleged police officer. Defendant (16) is being sued individual and official capacities.

29. Defendant (17) City of Caryville, TN TN a governmental entity organized and existing pursuant to the laws of the State of Tennessee and Campbell County, TN. Defendant (17) City of Caryville, TN is sued in its official capacity only.

30. Defendant (18) Bill Widenor previously Chief of Police in the City of Caryville, TN . Defendant (18) is being sued individually and official capacities.

31. Defendant (19) Fred Stagnolia an alleged police officer working for the City of Caryville, TN Defendant (19) is being sued individually and official capacities.

32. Defendant (20) Tennessee Wildlife Resources Agency a governmental entity organized and existing pursuant to the laws of the State of Tennessee, TN Defendant (20) is sued in its official capacity only.

33. Defendant (21) Brent Harrison an alleged Tennessee Wildlife Resources Agency Officer Defendant (21) is being sued individually and in his official capacities.

34. Defendant (22) any individual or individuals involved in the conspiracy or cover up, working on or about May 26, 2004 (Beating of Plaintiff), May 28, 2013 (Trespassing), July 22, 3013 (Trespassing), for the Campbell County Sheriff Department, Campbell County, TN Defendant (22) is being sued individually and in their official capacities.

35. Defendant (23), Sheriff of Campbell County, Robbie Goins in his official Capacities' of Sheriff of Campbell, TN.

36. Defendant (24), Kamile Bond with 911, in her individual and official capacities as employee, in Campbell, County, TN.

37. Defendant (25) James McCall, Badge #734, (Alleged officer of Campbell County). In his individual and official Capacities as employee, in Campbell County, TN.

38. Defendant (26), Cory Chapman (alleged officer of Campbell County). In his individual and official capacities as employee, in Campbell County, TN.

39. Defendant (27), Cody Chapman, (alleged officer of Campbell County, TN. In his individual and official capacities as employee, in Campbell County, TN.

40. Defendant (28), Franklin Ayers, Badge 710, alleged officer of Campbell County, TN. In his individual and official capacities as employee, CCSD in Campbell County, TN.

41. Defenant (29), Billy Marlow, Alleged night jailer, in his individual and official capacities as employee, CCSD, in Campbell County, TN, and alleged to be kin to Verlin Hatfield Lafollette Police Officer defendant (s) (16). Conspired in the beating of plaintiff (Higdon) along with defendant (22C) Jane Doe C.

## FACTUAL ALLEGATIONS

## FOR FIRST CAUSE OF ACTION (S):

## RELIEF -- TO REINSTATE PLAINTIFF TO THE CARYVILLE JACKSBORO UTILITY COMMISSION BOARD – DECLARATORY JUDGMENT WITH BENEFITS FROM JUNE 1, 2002; 28 USC §§ 1331, 1343

42. The material allegations set forth in Paragraphs 1-38 of the Complaint are incorporated by reference herein as if fully set forth.

43. For fifty three (53) years plaintiff has never had any complaints with the Judicial system or public official's until being appointed to the Caryville Jacksboro Utility Commissions.

44. On or about June 21, 2002 a letter was sent from the Mayor, Jeanne R. Higdon, THE TOWN OF JACKSBORO, to Mr. Frank Wallace, Caryville-Jacksboro Utilities Commission:

    a.    "Dear Mr. Wallace: The Jacksboro Board of Mayor and Alderman met in regular session on Thursday, June 6, 2002 at 7:00pm" . . .

    b.    Motion made by Shelton second by Nelson to appoint Tommy Higdon, as Jacksboro's representative, on the CJUC Board: Vote: Aldermen Nelson, Shelton, Mayor Higdon --- yes, Alderman Cannon --- pass."

        i.    Motion passed, and appointed James Higdon to serve the two year term or until replaced as Jacksboro's representative on the Caryville-Jacksboro Utilities Commission . . .

        ii.    With his knowledge and experience, we feel that Tommy (plaintiff) will be an asset to the Caryville-Jacksboro Utility Commission.

        iii.    Please accept this letter as our official notice. Sincerely, Jeanne R. Higdon, Mayor Town of Jacksboro."

45. On or about June 27, 2002 a letter from Jim Finane, MTAS Special Projects Consultant, University of Tennessee, sent a letter to the Town of Jacksboro, stating:

    a.    Dear Mayor: "You called last week with a question regarding the Jacksboro Board of Mayor and Aldermen's ability to act on matters at a regularly scheduled

Board meeting when those matters to be considered were not specifically enumerated on a written agenda." "The fact that you have no adopted procedures is prima facie evidence that you are not bound to a written agenda," Bradford v. City of Jellico." "Under RRONR Section 40, agenda is binding on a body only if it is adopted as the official agenda by a majority vote at the beginning of the meeting to which it applies." This not your case. "Our Senior Legal Consultant, Sid Hemsley, has assured me that the foregoing is an accurate answer to your question."

46. On or about June 27, 2002, James (Tommy) Higdon purchased a \$5,000.00 Fidelity Bond for the Jacksboro-Caryville Utilities from Security Insurance Co. for \$100.00.

47. On or about June 27, 2002 Caryville-Jacksboro Utility Commission Board Member OATH OF OFFICE was sworn to by James T. Higdon and witnessed by Bobby Joe Nelson.

48. Receipt by Frank Wallace, Director of Jacksboro-Caryville Utility Commission on June 28, 2002, at about 12: noon a folder containing the following:

    a.    One (1) letter from the Mayor

    b.    One (1) Cash Receipt for Fidelity Bond

    c.    One (1) set of Board of Mayor and Aldermen meeting minutes for June 6, 2002

    d.    One (1) letter from the University of Tennessee Municipal Technical Advisory Service

    e.    One (1) Oath of Office

49. On or about July 2, 2002, J. Stephen Hurst, Jacksboro City Attorney, sent letters out to Mr. Robert Burden, Chairman, Caryville-Jacksboro Utilities, Jacksboro, TN, stating:

a. "Dear Mr. Robert Burden: On June 6, 2002 at 7:00 pm in a regular session, the Town of Jacksboro appointed Tommy Higdon to serve a two year term as its representative to the Caryville-Jacksboro Utilities Commission.

b. On behalf of the Town of Jacksboro we are requesting that the proper oaths be administered and Mr. Higdon be placed on the Board."

c. Copies were mailed to: Frank Wallace, Head of Utilities, Lee Asbury, Attorney, Mayor Jeanne R. Higdon, Mayor, Glen Nelson, Vice Mayor, Ray Green, Counsel member, Jack Cannon, Counsel member, Brenda Shelton, Counsel member.

d. Plaintiff was never accepted on Utility Board.

## THE START OF THE CONSPIRACY:
## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983, 28 USC §§§ 1931, 1943, 1367, AND THE FOURTH AND FOURTEENTH AMENDMENTS VIA CONSPIRACY, RACKETEERING, DEREDILICTION OF DUTIES, AND GOOD FAITH, TORT;

50. Mr. Robert Burden being brother of Harry Burden, foreperson, of Grand Jury and William Paul Phillips, acting District Attorney General (refusing to act) all being closely related as friends and associates for the personal benefit of each other.

51. The material allegations set forth in Paragraphs 1-44 of the Complaint are incorporated by reference herein as if fully set forth.

52. On or about July 1, 2002, the *District Attorney' Office of Campbell County was approached, verbally, with letters, and fliers' asking him to do his job.*

53. On or about October 11, 2002 Ron Darden, Municipal Management Consultant, University of Tennessee wrote Fire Chief Greene a letter in reference to the minimum standards for employment:

a. "While it is an excellent goal to have well trained and certified fire fighters, there is no legal requirement that they be certified. If your department elects to enter the state certification program, your firefighters may be eligible for supplemental pay.

b. I have also attached an outline of certification requirements should your city desire to participate in the certification program. It would appear to be in your community's best interest to have well trained firefighters who have attained certification.

c. Your city might be liable due to your department's gross negligence at a fire; if you just watch a building burn; or if your department sets a fire.

d. On or about March 19, 2003, Doyel Williamson, Joel Clark, refused to fight the Fire located at 3070 Appalachian Highway, Jacksboro, TN, known as Eagle Market, and making a statements as to such: "Let the dam thing burn," also refused to apply water to the building.

54. On or about March 19, 2003 Affidavit of complaint filed by Jason Heatherly; Agg. Assault on fireman, assault on police officer, interfering with police and fire, resisting arrest; on the above date there was a fire at the Eagle Market; the building was completely in flames and there was firemen at the front and back of the building. The defendant then went to the back of the building to try to make entry to the building. The Firemen then would not let him in for his safety. At that time the def. then threw one of the Firemen to the ground and sent the firemen to the ER by ambulance and struck another one with his fist. Myself, Freddie Stagnolia, and Chief Widener went to the back of the building where the def. was I asked the defendant to come to the front of the building so the firemen could do their job. I asked this 6 or 7 times and he refused.

Myself and Officer Stagnolia then got defendant by his arms to take him to the front of the building. The def. then pulled away from us trying to hit me and did strike officer Stagnolia in the face at that time there was a struggle and myself, Officer Stagnolia and Chief Widenor put him on the ground and placed handcuff's on the def. This offense did occur in Campbell County Jacksboro, TN; witness: Shannon Marlow JFD, Joel Clark LFD, Eddie Hatmaker LFD, Daniel Lawson LFD, Doyle Williamson CFD, Bill Widenor CPD, Freddie Stagnolia CPD.

55.     On or about May 10, 2003, Shannon Marlow has now recovered sufficiently to be able to return to light work duties by Oak Ridge Neurosurgical Associates West mall Medical Park, Suite 350, Oak Ridge, TN (865) 482-8944; Marlow can return to regular duty on May 26, 2003 by Diana Wilson, M.D.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983, 28 USC §§§ 1931, 1943, 1367, AND THE FOURTH AND FOURTEENTH AMENDMENTS VIA CONSPIRACY, RACKERTERRING, DEREDILICTION OF DUTIES, AND GOOD FAITH, FRAUD, FRAUD UPON THE COURT, TORT;**

56.     The material allegations set forth in Paragraphs 1-48 of the Complaint are incorporated by reference herein as if fully set forth.

57.     On or about May 29, 2003, a letter from Mike Hatmaker, Attorney to Plaintiff stating he would take case (11665) for $5,000.00, amount paid at that time. He stated,

    a.      "we conducted the preliminary hearing May 28, 2003. At the conclusion of the hearing, you were bound to the grand jury on four misdemeanor charges, resisting arrest, interfering with officers (a very vague charge on which to be bound over), and two counts of assault. You had been charged with multiples misdemeanor

offenses and one felony count, aggravated assault. The Judge reduced the

aggravated assault charge to the misdemeanor assault."

58.     On or about July 2, 2003, Check # 4532 written to Thompson & Childress Court

Reporters for reporting Services: May 28, 2003, Transcript of Proceedings.

59.     On or about July 8, 2003 memo to file of Investigation Officer Cohan: "We (Cohan &

Hatmaker) need to check the status of Shannon Marlow's criminal charges. Also, we

need to remember the episode involving the car at Perkins Subdivision. I need to look at

the police reports involving that. There was a claim of a deer. Also, Tommy says that

Marlow was involved in a light plane crash a year or so back. He said that a Watson

fellow was killed, and that Marlow was involved. Marlow easily could have a back hurt

in that episode. Tommy thinks that event occurred in Claiborne County, End of Memo."

60.     On or about July 11, 2003 a refund of check # 4532 for overpayment to Plaintiff from

Thompson & Childress, court reporters.

61.     On or about July 11, 2003 Plaintiff Paid Michael J. Cohan, Investigative Officer, 531

South Gay Street, Suite 900, Knoxville, TN $1,500.00 by advise from Attorney

Hatmaker.

62.     On July 11, 2003, letter from Hatmaker to Cohan: "Let me initially point out, as I am sure

you will immediately see, there is a major discrepancy between the affidavit of complaint

and the indictment.

   a.     The affidavit correctly sets forth that the event occurred March 19.

   b.     Inexplicably, the indictment lists the date of the occurrence as April 19.

   c.     In sum and substance, our position is that Mr. Higdon, who by the way is a

          volunteer fireman for Jacksboro, went to his place of business and, faced with an

emergency situation, did what he thought was proper, and certainly did not do anything which would give rise to criminal conduct."

63. On or about August 23, 2003 the account of Michael J. Cohan had a credit balance of $722.40 in which Plaintiff never received. In fact, the investigation was never used and had inaction.

64. On or about November 6, 2003 Attorney Hatmaker notified plaintiff that Judge Sexton (2), has recused himself from the case, cr11665.

## AS AND FOR A FORTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983, 28 USC §§§ 1931, 1943, 1367, AND THE FOURTH AND FOURTEENTH AMENDMENTS VIA CONSPIRACY, RACKERTERRING, DEREDILICTION OF DUTIES, AND GOOD FAITH, FRAUD, FRAUD UPON THE COURT, TORT, FALSE ARREST; AGGRAVATED ASSAULT,

65. The material allegations set forth in Paragraphs 1-55 of the Complaint are incorporated by reference herein as if fully set forth.

66. On or about May 26, 2004, Verlin Hatfield Defendant (16) an alleged police officer Badge # 726 working for the City of LaFollette, Defendant (14), pulled Plaintiff over driving his 1992 dodge pickup truck going Northeast in front of the LaFollette Middle School on highway 63 in the City of LaFollette, TN at approximately 1:00am.

67. Defendant (16) nearly hit another car to get behind plaintiff to turn on his flashing lights. Plaintiff immediately pulled into a convenience store for safety. Other police officers were called in as back up.

68. Plaintiff was arrested for DUI and taken to the Campbell County Jail, Defendant (8), for booking. Plaintiff was never given any Miranda Rights and there being no reasonable grounds to be pulled over.

69. At the jail were two (2) other police officers one a female, defendant (Jane Doe). Plaintiff was given a form and told to fill it out; the alleged Police Officer, Billy Marlow (defendant 29), Campbell County Sheriff Department was in charge of the beating (defendant 8). The form was Tennessee Department of Safety Implied Consent Report, SF-0388; plaintiff immediately filled out the form but refused to sign his signature giving consent.

70. The two male officers stated (defendant's 16, 29)"you will sign that form" and the female officer stated "Tommy, for your safety you need to sign the form." Plaintiff had no idea what she was inferring. Still handcuffed the male police officers stated let's go, and they took me out of the room and into a nearby hall and stopped.

71. Plaintiff was standing with his back to a wall and about that time one male police (Billy Marlow, defendant 29) officer hit plaintiff in the face with leaded gloves on his fists. Plaintiff hit the wall and went down on to the floor; seeing his nose and blood go by his eyes.

72. Still handcuffed on the floor the two male officers (defendants 16, 29) begin to kick the plaintiff in the head and face with steal-toed boots; after they finished kicking plaintiff was told to get up. Plaintiff had difficulty getting up with his hands behind his back, and at that monument one of the male officers begin to spray maze into plaintiff eyes, from then on for about four (4) to five (5) hours plaintiff was blind.

73. Plaintiff was placed into a small holding room until around 9:00am when they let plaintiff make a phone call. Plaintiff called his wife and she called BC Bonding, Clyde Richardson, make bail.

74. When Clyde saw plaintiff covered with blood from head to toe his statement was; "they do this all the time," meaning they beat people up all the time.

75. I immediately went into see the Sheriff Ron McCullan, Defendant (8) Campbell County, but he had not arrived and his office was locked. I sat down and waited for him to arrive.

76. When he arrived at work, he stated, "what in the world has happened to you." Plaintiff stated, "when I arrived here I had on clean clothes and not beaten up. "I'm headed to the hospital and going to take pictures of myself as evidence as to the beating your deputies put on me.

77. A friend of mine, Burt Phillips, took me to the hospital and took some pictures. At the hospital a police officer came to me and ask me to make an accident report as to what had happened. I did.

78. At the hospital an alcohol test was done and the results were zero percent (00.00) alcohol level in my system.

79. My wife called Sheriff Ron McCullan and asked what had been done to the deputies on duty. He stated that Officer Sammy Franklin[8] had done and investigation and that Plaintiff had lied.

80. The next day I went by my lawyer's office, Michael G. Hatmaker, Attorney, Defendant (6) & (7), and asked to sue the deputies and the Sheriff Department of Campbell County. He stated, that they were not going to press any charges against me, if I would not sue.

81. My Lawyer stated it was a standoff and I would be better off by not suing them in a civil case. Plaintiff stated " he had not done anything," but Mr. Hatmaker Attorney stated

---

[8] One of the five convicted in James Siler beating; a convicted felon.

"you know how this goes, believe me you are better off not filing suit." Plaintiff took

advice of Attorney Hatmaker.

82.     Later, a jail inmate told plaintiff that Officer Finley, CCSD, and other Officers had been viewing the video of plaintiff Higdon's beating.

83.

84.     **AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983, 28 USC §§§ 1931, 1943, 1367, AND THE FOURTH AND FOURTEENTH AMENDMENTS VIA CONSPIRACY, RACKERTERRING, DEREDILICTION OF DUTIES, AND GOOD FAITH, FRAUD, FRAUD UPON THE COURT, TORT, FALSE ARREST; A DECLARATORY DECREE WAS VIOLATED AND NO RELIEF WAS AVAILABLE.**

85.     The material allegations set forth in Paragraphs 1-57 of the Complaint are incorporated

by reference herein as if fully set forth.

86.     On or about June 27, 2004, Sunday, Brent Harrison a Tennessee Wildlife Resources

Agency Officer (defendants 20, 21), gave James Thomas Higdon (plaintiff) a citation

(41490) at Hatmaker Point Access Area.

87.     Violation of R & R 1660-1-1 Use and possession of alcohol on a state access area.

    i.      Narrative: "James Thomas Higdon was observed to be in possession of an open

            beer or container of alcohol upon observing hid the beer and then threw it into the

            lake. This incident occurred in Campbell County."

    ii.     Violation of TCA 39-14-502, littering on a state access area.

    iii.    On June 27, 2004 Brent Harrison arrested James T. Higdon and placed on a

            $5,000.00 bail. Littering is a $50.00 fine.

    iv.     The alleged Brent Harrison is not POST Certified to make arrest under T.C.A. or

            as TWRA Officer.

    v.      On June 28, 2004 Brent Harrison based upon the affidavit of complaint sworn and

            attest he has probable cause to re-arrest James T. Higdon.

      vi.     Judge /Clerk did not sign.

88.    Generalized Statement of James T. Higdon: As it approached darkness. I began to get my jet ski out of the water. James Higdon dropped his brother off at the ramp, so his brother J. R. Higdon could go get the truck. J.R. Higdon backed the trailer down the ramp and James Higdon proceeded to load his jet ski while standing knee deep to waste high in the lake water. As James Higdon loaded the jet ski, a can was floating around the trailer in the water. James Higdon picked the can up and threw it onto the bank to get it out of his way. James Higdon's intentions were to immediately pick the can up on his way out because he assumed it had fallen out of his ski. James Higdon was not paying any attention to who was coming down the road. Brent Harrison, TWRA, saw James Higdon throw the can, and he thought Higdon threw the can because Harrison ran over to the front side away from the family and picked up a can came back and slammed it on the back of his truck in anger; not giving Higdon amble time to pick up the can of water.

89.    My wife, my daughter, my brother, and son in law were at Hatmaker's access ramp that day. They all witnessed the incident with astonishment. The charges were so ludicrous that I refused to sign the citations. In my opinion, an arrest such as this is not only a breakdown of our justice system but also pure harassment.

90.    Additionally, when this was reported in the public records section in the LaFollette Press, a charge of public intoxication had been added to the other charges, and litter and throwing out beer cans in a State Park, (Cove Lake State Park, Caryville, TN). Case was dismissed in general sessions court and brought back in a sealed indictment before grand jury, Harry Burden 39 year foreman, for a true bill.

91.

## AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983, 28 USC §§§ 1931, 1943, 1367, AND THE FOURTH AND FOURTEENTH AMENDMENTS VIA CONSPIRACY, RACKERTERRING, DEREDILICTION OF DUTIES, AND GOOD FAITH, FRAUD, FRAUD UPON THE COURT, TORT, FALSE ARREST;

92.     The material allegations set forth in Paragraphs 1-61of the Complaint are incorporated by

        reference herein as if fully set forth.

93.     On or about July 8, 2004, Lester Eugene Siler was beaten and threatened by five

        Campbell County Sheriff's deputies; the officer's hooked jumper cables to his gentiles;

        the abuse was taped on a hidden recorder placed by Jenny Siler; Officer Samuel R.

        Franklin and Shayne Green were two of the five Campbell County Sheriff's deputies that

        took part in the beating of Siler; Samuel Franklin is also the Officer that investigated the

        beating of the plaintiff Higdon.

94.     The Officer's received approximately four (4) years in Federal prison. While the local

        prosecutor 8th District  taking inaction.  Siler and his spouse, Jenny, received no

        compensation, relief, and allegedly Siler's civil attorney is now working for the 8th

        District D.A., defendant (2).

95.     On or about September 27, 2005, plaintiff was denied his handgun permit unless he

        provided the State of Tennessee, with Certified Dispositions of the status of his cases.

96.     On or about October 22, 2005, Shannon Marlow, Jacksboro Fire Department, announced

        on MySpace that he was an agnostic and can prove God is dead!!! That Joel Clark,

        LaFollette Fire Department, was a personal friend;  listed on MySpace.  How can

        Shannon Marlow make a sworn oath to the court and not believe in GOD?  To me this

        would be perjury and making false statements to the General Sessions's court, Grand

Jury, and Criminal Court, August 22, 2011, and in making out the complaint to the
arresting Officer, Jason Heatherly; being four counts of perjury.

97. On or about March 31, 2006, Plaintiff Higdon was involved in a four (4) car accident on
Appalachian Highway going Southwest into the Town of Jacksboro, TN; Plaintiff
Higdon being in the middle, third car back. Plaintiff Higdon was charged with
following to close and DWI.

98. On or about June 1, 2006 the Grand Jury heard the case (one count DUI) and came back
with "not a true bill," there being insufficient evidence for reasonable doubt, and the case
was dismissed. Plaintiff Higdon testified on his behalf at the Grand Jury.

99. On or about November 09, 2006 Scarlett Ellis Amended Discovery Comes now the State
of Tennessee and hereby amends the State of Tennessee's Response to Discovery dated
September 18, 2003 as it relates to the Demand for Notification Defenses. Its intent to
rely on the defense of Alibi in that pursuant to Rule 12.1 of the Tennessee Rules of
Criminal Procedure, the State demands notice which the defendant claims to have
been at the time of the alleged offense; and the names and addresses of the witnesses
intended to establish the alibi. The alleged offense was committed on March 18, 2003 in
the am hours, at Eagle Mart in Jacksboro, TN.

100. On or about November 10, 2006 Hatmaker made "RESPONSE TO MOTION TO
ADMEND."

101. On or about January 11, 2007 a letter from Scarlett W. Ellis, ADAG, to Judge Richard
Baumgartner (3), to find enclosed a copy of the State's Motion to Amend Indictment,
case cr11665, Defendants Response, and the State's Answer to the Response. "Thank you

for your attention to this case. We will await Judge Baumgartner's (3) ruling as it relates to the Motion to Amend the Indictment;" dated by mail January 16, 2007.

102.    On or about January 11, 2007 two counts of DUI, T.A.C., 55-10-401 (CR13153), in a sealed indictment to the Grand Jury, Harry Burden (defendant 5, was foreman of grand jury for 39 years) was presented without Plaintiff being notified.

103.    The accused must be notified and beware of the charges presented against him. The offense date for both counts were the same March 31, 2006; this being double jeopardy, perjury, conspiracy, and providing false evidence to a Grand Jury. Harry Burden, foreperson of the Grand Jury and Paul Phillips being the prosecutor.

104.    Prejudice and conflict of interest in Campbell County's Judicial System is in violation of Plaintiff's Bill of Rights under the Constitution of the United States, Fifth Amendment,[9] Fourteenth Amendment, Sixth Amendment[10]. On or about March 28, 2012, case was dismissed "on recommendation of the Attorney General, this case is Dismissed. IT IS SO ORDERED." Pending approximately six (6) years. False arrest, conspiracy, racketeering, fraud upon the court, tort, etc.

105.

### AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983, 28 USC §§§ 1931, 1943, 1367, AND THE FOURTH AND FOURTEENTH AMENDMENTS VIA CONSPIRACY, RACKETERING, DEREDILICTION OF DUTIES, AND GOOD FAITH, FRAUD, FRAUD UPON THE COURT, TORT, FALSE ARREST

---

[9] Amendment V.... no person shall be held to answer a capital...crime, unless on a ....indictment of a grand jury....nor shall any person be subject for the same offense to be twice put in jeopardy ...nor be deprived of life, liberty, or property, without due process of law....

[10] Amendment VI.... In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...and to be informed of the nature and cause of the accusation....to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

106. The material allegations set forth in Paragraphs 1-70 of the Complaint are incorporated by reference herein as if fully set forth.

107. On or about January 16, 2007, Attorney of Record was recorded in the Clerk's Office as Michael Hatmaker (CR13153). Plaintiff was not informed of two counts; only one count by Attorney Hatmaker.

108. On or about December 12, 2008 Plaintiff wrote a letter to Attorney Hatmaker, "for our meeting of December 15, 2008 see if you can get a copy of their video, all evidence, witness list, etc, of Eagle Fire from the DA. Their video might be different from ours. Could we make a motion of conflict of interest between Paul Phillips and James Higdon due to several cases (3) have been dismissed by the Judge and grand jury, and the DA still pursue with concealed indictments." The video the District Attorney gave us to review was different from what we had.

109. On or about December 29, 2008, Attorney Hatmaker made motion to court:

110. "Comes Defendant, Tommy Higdon, by and through counsel, and moves the court for an Order directing the district attorney's office and staff from participation in this cause

111. It is improper for the state of Tennessee to either list or call a witness to the stand who is a member of the prosecution staff."

112. On or about February 2, 2010 Judge Richard Baumgartner (3) wrote a letter to Attorney Hatmaker; "Dear Mr. Hatmaker: First, please except my apologies for being so tardy in addressing this matter. This has been an extremely busy year in this office, and this matter did not come to our attention until Ms Ellis letter dated December 16, 2009. I apologize for the delay. As you can see, I feel that the potential that Ms. Phillips-Jones will be a witness in this case is an irresolvable conflict, and therefore find that this case

should be sent to another District Attorney's Office for prosecution. Please let me know when that has been accomplished so that we can take appropriate steps to get this case docketed for resolution. Again, please except my apologies, and let me know if further action is needed on my behalf at this time. Sincerely, Richard R. Baumgartner"

113. On or about September 15, 2013, a ski boat and trailer was left on plaintiff's property, 522 Mountain Perkins Lane, Jacksboro, TN. 37757, with the name imprinted twice on the trailer BAUMGARTNER.

114. Ms. Phillips-Jones rebuttal and cross examined plaintiff during the grand jury and refused to let him give his version of the video; it being late and the video had already been seen by the grand jury (6:00pm). Later a grand juror stated that Harry Burden, foreperson, had voted to give the grand jury enough votes for a true bill.

115. Being tardy and having a busy year is not grounds for a continuance, fair, impartial, competent Judge, Under Speedy Trail Act 1974, and due process through the Fourteenth Amendment, U.S.C.

116. Harry Burden, foreman, being the twelfth juror to vote on true bill.

117. On or about June 27, 2011, a letter from Judge Blackwood (4) to Attorney Hatmaker, plaintiff for cases12158, 12296, 11665, 13153, to set matter for August 22, 2011. "The Court being unaware of any pending pretrial motions. However, if there are any pending pretrial motions that require an evidentiary hearing, they should be scheduled on or before July 22, 2011." Plaintiff was never aware of this letter from Judge Blackwood, until receiving plaintiff's file from Hatmaker's Law Office on or about September 10th, 2010. Plaintiff would ask the court as to whom were the prosecutors' at this point in time, Garrett or Ellis? There being no documentation on file authorizing Garrett to be

prosecutor or to provide evidence to trial court. Garrette prosecutor presented one video in trial court without authenification not filed with trial court as evidence until seventeen days after trial and trial court judge would not allow video to carry over to appeals court. Video of defendant was completely different from the video that plaintiff had; plaintiff tried to show to Grand Jury and trial court his version of the video, but was not allowed.

118.

## AS AND FOR A EIGHTH  CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983, 28 USC §§§ 1931, 1943, 1367, AND THE FOURTH AND FOURTEENTH AMENDMENTS VIA CONSPIRACY,  RACKERTERRING, DEREDILICTION OF DUTIES, AND GOOD FAITH, FRAUD, FRAUD UPON THE COURT, TORT, INSUFFICIENT COUNSEL; VIOLATION OF DUE PROCESS.

119.  The material allegations set forth in Paragraphs 1-80 of the Complaint are incorporated by reference herein as if fully set forth.

120.  Letter to Hatmaker, Plaintiff Atty, from Plaintiff, On or about July 11, 2011, Steve Garrett, ADAG, case # 11665, has been assigned to prosecute the case pro tem and the matter is set for trial on August 22, 2011; please find attached a list of witness to be subpoenaed for that trial. Hatmaker did not subpoena any witnesses or records. Did not provide any defense and did not show defendants version of the video in slow motion for the true context.

121.  Atty Hatmaker did not have any council with Higdon before trial; in fact Hatmaker missed approximately ten (10) scheduled appointments.

122.  Atty.  Hatmaker's assistant gave closing statement after promising plaintiff (Higdon) to let him (Higdon) give closing statement.

123.  Atty.  Hatmaker's assistant stated to trial jury when the scales of justice are slightly out of balance you must convict. Telling the jury to convict his own client.

124. Michael Glen Hatmaker, BPR Number: 005391, Suspended –CLE from practicing law approximately August 31, 2011; nine days after trial court, the time to prepare/file for appeals. Never told client Higdon and refused to turn over records after he was dismissed as Higdon's attorney.

125.

### AS AND FOR A NINETH CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983, 28 USC §§§ 1931, 1943, 1367, AND THE FOURTH AND FOURTEENTH AMENDMENTS VIA CONSPIRACY, RACKERTERRING, DEREDILICTION OF DUTIES, AND GOOD FAITH, FRAUD, FRAUD UPON THE COURT, TORT, INSUFFICIENT COUNSEL; VIOLATION OF DUE PROCESS.

126. The material allegations set forth in Paragraphs 1-82 of the Complaint are incorporated by reference herein as if fully set forth.

127. On or about August 22, 2011 as to the history case docket of court records no action was taken at this time.

   (a). United States v. Saltzman, 984 F.2d 1087, 1090-1092.
   
       i.    Barker v. Wingo, 407 U.S. 514 (1972) If it is found that a defendant's right to a speedy trial was violated, then the indictment must be dismissed and/or the conviction overturned. A reversal or dismissal of a criminal case on speedy trial grounds means that no further prosecution for the alleged offense can take place.
   
       ii.    Lower courts have generally held that trials should be held within six to eight months of the charges; undue delay before an accusation violates the due-process clause (U.S v. Lovasco, 1977).

128. That Prosecutor, Paul Phillips, showed Misconduct and Abuse of his Office, prejudice.

   a.    Plaintiff (Higdon) would request an "in-camera review" of the Grand Jury investigation (United States V. Sigma). (denied).

31

b.  LaFollette Press states: "It seems that this is another scream for the DA, Paul Phillips, to drum up monies for his cause.[11]" Foreman of the Grand Jury, Harry Burden (39 years) has known the movant and his family for over 60 years. This showing prejudice and conflict of interest in our court system.

129. UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, 1998 U.S. Dist. LEXIS 13675, RICHARDS V. NYC. The parties agree that the question of whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993); see also Kalina v. Fletcher, 139 L. Ed. 2d 471, 118 S. Ct. 502, 508 (1997) (reaffirming this functional approach). "It is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under Section 1983." Ying Jing Gan, 996 F.2d at 530 (quoting Imbler v. Pachtman, 424 U.S. 409, 430, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976)). The "judicial phase of the criminal process" encompasses not only the actual trial, but also all actions that a prosecutor takes "in preparing for the initiation of judicial proceedings . . . and which occur in the course of his role as an advocate for the State." Kalina, 118 S. Ct. at 507 (internal quotation marks omitted). Such actions include the decision to bring particular charges against a defendant, see Ying Jing Gan, 996 F.2d at 530, the presentation of evidence to a grand jury, see Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir. 1986), and the evaluation and organization of evidence prior to trial. See Kalina, 118 S. Ct. at 507-08. As the authorities cited above suggest, however, prosecutors do not have absolute immunity for every action taken in their official capacity. "Absolute immunity is not available . . . when a prosecutor undertakes conduct that is beyond the scope of his litigation-related duties." Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987).

130. TN. Attorney General, Robert E. Cooper says, local court practice illegal in Campbell County; as a result of these practices, the District Attorney's Office, headed by Paul Phillips was second in the State in revenue in the 2006-2007 fiscal year; brought in more revenue than Knox, Davidson, Hamilton, or Shelby counties; head lines of LaFollette Press May 22, 2009.

131. Paul Phillips, DA, would be considered a habitual offender.

---

[11] Friday, May 22, 2009 LaFollette Press front page; "Robert E. Cooper released an article stating 8th District pleas agreements and convictions in Criminal and Sessions Courts being void."

132. On March 19, 2003, James Higdon, was removed from his burning building by officers, unlawful.[12] Defendants establishing liability for tort and felony offenses being charged to plaintiff in which are currently pending. Causing pain, suffering, loss of health and income.

133. On May 26, 2004, James Higdon, was arrested and beaten in Campbell County Jail, unlawful,[13] Causing pain, suffering, loss of health and income.

134.

## AS AND FOR A TENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983, 28 USC §§§ 1931, 1943, 1367, AND THE FOURTH AND FOURTEENTH AMENDMENTS VIA CONSPIRACY, RACKETEERING, DEREDILICTION OF DUTIES, AND GOOD FAITH, FRAUD, FRAUD UPON THE COURT, TORT; VIOLATION OF DUE PROCESS.

135. The material allegations set forth in Paragraphs 1-88 of the Complaint are incorporated by reference herein as if fully set forth.

136. Kamille Bond with 911 of Campbell County, Tenn. has refused access to audio recordings of incident taking place at plaintiff's home on May 28, 2013; stating due to an

---

[12] Chapman, Chief of Police, did not show up for Trial Court to testify against defendant (Higdon). Shayne Green, Fire Chief, did not show up for Trial Court to testify against defendant (Higdon). Under the Jacksboro's Fire Department Policy, the Fire Chief is the only one authorized "for cause" to remove anyone from a fire scene. **T.C.A. 6-21-703(a)(2) Emergency powers.** "The chief of the responding fire department or company, or any member serving in capacity of fire officer-in-charge, shall also have the authority to: (2) Order any person or persons to leave any building or place in the vicinity of such scene for the purpose of protecting such person or persons from injury." Defendant (Higdon) was a certified volunteer fireman and owner of the property; he had every legal right to be at the fire, to protect and defend his property. Jason Heatherly, JPD, Shannon Marlow, Caryville/LaFollette firemen, and Caryville Police (on duty or off duty), had no authority to place hands upon defendant (Higdon). Fruits of an unlawful arrest are invalid.

[13] Wittiness hospital, night clerk, video, sheriff, and bail bondsman.

investigation by the office of District Attorney General Office of the Eight Judicial District, Campbell County, Tennessee; she cannot release the information[14]; Information requested June 21, 2013. Causing pain, suffering, stress, loss of health and income, and no access to discovery.

137.    Campbell County Sheriff's deputies have entered my home twice, without being invited, going between two no trespassing signs, a locked gate, without presenting a warrant,[15] or any identification, or offering Myranda Rights. Fruits of an unlawful arrest are invalid. The incidents could have been nearing the James Siler's Arrest in Campbell County few years back, or Irma Marquez, v Yonkers Police Department Docket No: 08 CV 4903(SCR)GAY), or Robert Hatfield, etal, v. Campbell County (March 21, 2012). Me and my family fear for our lives.

138.    On May 28, 2013 deputies[16] went through two no trespassing signs, fourteen feet apart, entered my home, kicked open doors, and left the house unsecured; without giving any type of notification to me or my family.  Plaintiff read about it in the newspaper.

139.    When asked for a signed police report; I was denied, and clerk stated it would probably be about one month before it would be available. I received a police report on August 14, 2013 in the County Clerk's Office in which I would allege to be incomplete and non-

---

[14]She stated: July 18, 2013

[15] Reasonable expectation of privacy, then you need a search warrant.  Fourth Amendment

[16] The exact number unknown – County Officials refusing to disclosure.

disclosure for three-half hours of activity of numerous personnel.

140. When asked who was there and whom participated in the entrance / arrest, and who actually took place, I was denied (twice, June 4th, June 13th) by the Sheriff and once (June 13th) by Josh Carroll (a night clerk) stating only James McCall Badge 734, Cory Chapman Corrections Officer; Franklin Ayers Badge 710, CCSD, James Skeins Badge 306 Jacksboro Police.

141. Neighbors quoting about five police cars, ambulance and tow truck were there approximately one hour;  the police and alleged unknown (s),  stayed in my home for about three one-half hours.

142. On about July 22, 2013 alleged Campbell County Officer's[17] entered my home again without permission, passing between two no trespassing signs and going around a lock gate by foot, with guns, bullet proof vests, surrounding my home, and started interrogation; the officers presented no warrant, no identification, dressed in plain clothes, hands on their guns ready to draw, and offered no Myranda Rights. Fruits of an unlawful arrest are not valid. Telling my grandson to stand back; asking names of guest and telling them to stand back.

143. Friday September 16, 2011 LaFollette Press front page: One week following the wreck involving Campbell County deputy detective that resulted in termination of the detective and the Chief Deputy Jonathan Finley, the E-911 tapes were released to the media.

---

[17] Approximately seven (7) unknown and one identified, the one identified as B. Elkins did not enter the house.

144. The tapes revealed alleged attempted cover-up by two high ranking deputies; based on the tapes the accident occurred on Tuesday morning approximately four minutes after midnight;

145. Campbell County would be considered a habitual offender, conspiracy, fraud, racketeering, etc.

146. Fourth Amendment: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

147. The Fourth Amendment guards against unreasonable searches and seizures, along with requiring any warrant to be judicially sanctioned and supported by probable cause. It was adopted as a response to the abuse of the writ of assistance, which is a type of general search warrant.

148. **RULE 6: THE GRAND JURY, TENN. RULES OF CRIMINAL PROCEDURE.**

(a) **Formation of the Grand Jury.** (1) *Formation at a Regular Term.* On the first day of each term of court at which a grand jury is required to be impaneled, the judge of the court authorized by law to charge the grand jury and to receive its report shall direct the names of all the qualified jurors in attendance for the criminal courts of the county to be written on separate slips of paper and placed in a box or other suitable receptacle and drawn out by the judge in open court. The foreperson and the twelve qualified jurors whose names are first drawn constitute the grand jury for the term and shall attend the court until dismissed by the judge or until the next term.

36

149. Harry Burden has served as Grand Jury Foreman for thirty nine (39) years. Violation of Ten Rules of Criminal Procedure Rule 6(a)(1), Rule 6(g)(5), and Federal Rules of Criminal Procedure Rule 6(a)

150. Harry Burden allegedly voted as the twelfth (12th) vote to indict James Higdon Case No. E2013-01792-CCA-R10-CD, in Court of Criminal Appeals, Eastern Div. Knoxville, Tenn., including numerous indictments (approximately twelve criminal counts) from littering to aggravated assault; if convicted would have served approximately twenty (20) years or more in jail; Burden knowing my family for at least sixty (60) years; conflict of duty, oath, and office, being illegally appointed; violation of numerous statutes and declaratory decree's: Fraud upon the court, TN Rules of Criminal P. Rule 6(e)(7) Contempt, etc. Causing pain, suffering, loss of health and income.

151. Formal criminal complaints were made with: Chancery Court, Appeals Court, and TN Supreme Court, Tennessee Bureau of Investigation, Knoxville Consolidated Facility, 1791 Neals Commerce Lane, Knoxville, TN 37914; FBI, Special Agent in Charge, Kenneth L. Moore, 1501 Dowell Springs Boulevard, Knoxville, TN 37909; Leif E. Jeffers, ADAG,8th District Attorney General's Office, Campbell County Courthouse Annex, P. O. Box 323, Jacksboro, TN. 37757; John H. Bledsoe, AAG, State of Tennessee, Senior Counsel, Attorney General's Office, P. O. Box 20207, Nashville, Tennessee 37202, with affidavit. No action has been taken violating plaintiff's due process.

152. Formal notice of civil and criminal complaints, were mailed First Class U. S. Parcel to all defendants August 6, 2013; with affidavit. Notice has been made numerous times to all government and political parties, with inaction being made.

153. The State of Tennessee sealed off entrance into the gas tanks caps of plaintiff's convenient store and fined him approx.. \$40,000.00 for having steal tanks not properly grounded.

154. The state having done 20 years of prior inspections finding the tanks to be fiberglass and needed no grounding.

155. The state gave no prior notification of summons of service on plaintiff before going to court and gaing a judgment and gave no notification after receiving order to tag tanks.

156. The above action hurt the reputation of the store and caused termeninous loss.

157. The State of Tennessee levied a national bank (April 8, 2012), and out of State owned & affiliated Bank; without a notice or warrant being issued;

158. Levies were also made by the State of Tennessee on November 10, 2010 and are still being placed on (April 6, 2012) personal checking accounts; a checking account for the benefit of James T. Higdon; a checking account where direct deposits are made by the Social Security Administration; a social security check cannot be levied; Conspiracy and Racketeering on behalf of the State of Tennessee. Notices were given to the State in regard to the violation of T.C.A and the State still refused to comply.

159. False arrest, at General Session Court; Eagle Market, Jacksboro, TN, March 25, 2003, Four counts, Aggravated assault dismissed; 2003, three counts dismissed in 2011.

38

160. False arrest indictment by grand jury, Harry Burden and Paul Phillips , eight counts, one being the same aggravated assault in 2003, dismissed again 2011; five counts pending in appellate court. Town of Jacksboro, TN. All being alleged double jeopardy.

161. False arrest first time 2004, littering by Brent Harrison, TWRA Dismissed, 2012;

162. False arrest second time 2004 littering, etc, by CCSD, sealed indictment, Harry Burden and Paul Phillips, no reasonable doubt presented. Dismissed 2012.

163. False arrest 2004, assault on Joe Lay Firemen Town of Jacksboro, TN. Dismissed, 2011.

164. False arrest one DUI, 2004, Verlin Hatfield, City of LaFollette, TN. Did not prosecute 2004.

165. False arrest, one DUI's, 2006, James Skeen, Town of Jacksboro, TN. Dismissed by Grand Jury.

166. False arrest, two DUI's by Grand Jury in sealed indictment, Harry Burden and Paul Phillips,[18] Dismissed 2012.

167. Plaintiff had open-heart surgery, valve repair, July 2007; brought on by stress from the above.

168. Plaintiff wife moved out of the house approximate December, 2010, and filed for a divorce due to the above.

169. Plaintiff had to sell his business, the public labeling him as a bad character due to the above.

170.

## **DEMAND FOR JURY TRIAL**

---

[18] Referenced, Plaintiff has had no Judicial harassment since the retirement of Harry Burden and Paul Phillips.

171. The material allegations set forth in Paragraphs  1- 170  of the Complaint are incorporated by reference herein as if fully set forth.

172. Plaintiff James T. Higdon hereby demand a jury for the trial of this cause.

## RELIEF REQUESTED:

**PRAYER FOR RELIEF,** Premises considered, defendant prays:

173. The material allegations set forth in Paragraphs  1- 172  of the Complaint are incorporated by reference herein as if fully set forth.

174. That plaintiff be awarded declaratory judgment,[19] in that Campbell County, TN. should abide by TN Rules Of Criminal P. Rule 6 or Federal rules of criminal procedure Rule 6 in the appointment of a Grand Jury and Foreperson.

175. and that Harry Burden disclose the number of times he voted on the Grand Jury in the 37 years, (39 years less 2 years equal 37 years in violations of TRCP Rule 6).

176. And that the Town of Jacksboro, City of Caryville,  and  Caryville Jacksboro Utility Commissions should abide by their Charters and reinstate James Higdon on their utility board, with all previous benefits.

177. And Campbell County Sheriff Department disclose the number of non-certified personnel/deputies they have on the payroll and off payroll. That they abide by POST standards in the hiring and training of personnel (T.C.A.) and the District Attorney General of Eighth Judicial District oversee or be sanctioned.

---

[19] A judgment of a court in a civil case that declares the rights, duties, or obligations of one or more parties in a dispute
.

178. And, Town of Jacksboro disclose the number of non-certified personnel/deputies they have on the payroll and off payroll; abide by POST standards in the hiring and training of personnel (T.C.A.) and the District Attorney General of Eighth Judicial District oversee or be sanctioned.

179. And, City of Caryville, Tennessee, disclose the number of non-certified personnel/deputies they have on the payroll and off payroll; abide by POST standards in the hiring and training of personnel (T.C.A.) and the District Attorney General of Eighth Judicial District oversee or be sanctioned

180. And that Campbell County 911 release public information of May 28, 2013, and July 22, 2013, between the hours of 4:00am and 7:30am; and,

181. That Campbell County Sherriff Department unveil the investigation/report that took place on May 28, 2013, between the hours of 4:00am and 7:30am; at Plaintiff's home located at, 522 Mountain Perkins Lane, Jacksboro, TN. 37757 ; in detail: names, number of people, their qualification, and authority to be there, and what they did once they were there for three and half hours, and whom was in command; disclose all items taken into the house and out of the house.

And

182. That 8ᵗʰ District Attorney General's Office, State of Tennessee, unveil the investigation that took place on May 28, 2013, between the hours of 4:00am and 7:30am; at Plaintiff's home located at, 522 Mountain Perkins Lane, Jacksboro, TN. 37757 ; in detail: names, number of people, their qualification, and authority to be there, and what they did

once they were there for three and half hours, and whom was in command; disclose all items taken into the house and out of the house.

183. That plaintiff be awarded a up to a sum of twenty two million three hundred thousand dollars ($22,300,000.00) compensatory damages,[20]

   And,

184. One million Five hundred thousand dollars ($1,500,000.00) punitive damages[21] against defendants per each cause, count.

   And,

185. Plaintiff be awarded his reasonable attorney fees and costs[22].

   And,

186. Plaintiff be refunded all money's collected by defendants.

187. The Plaintiff would reserve the right to amend with specificity; and to add additional grounds; and to add unknown John and Jane Doe's.

---

[20] Definition of **'Compensatory Damages'** Money awarded to a plaintiff to compensate for damages, injury, or another incurred loss. Compensatory damages are awarded in civil court cases where loss has occurred as a result of the negligence or unlawful conduct of another party. To receive compensatory damages the plaintiff has to prove that a loss occurred, and that it was attributable to the defendant.

[21] **Punitive damages** awarded in a lawsuit as a punishment and example to others for malicious, evil or particularly fraudulent acts. The U.S. Supreme Court, in *BMW of North America v. Gore*, 517 U.S. 519, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996), also developed guidelines for assessing punitive damages. The Court held that the "degree of reprehensibility of defendant's conduct" is the most important indication of reasonableness in measuring punitive damages. The Court also measured the possible excessiveness of a punitive damage award by applying a ratio between the plaintiff's Compensatory Damages and the amount of the punitive damages; Punitive damages will not be awarded in tort actions based on the defendant's Negligence alone. The conduct must have been willful, wanton, or reckless to constitute an intentional offense. Willfulness implies a plan, purpose, or intent to commit a wrongdoing and cause an injury. "Today, a 3-2 vote of the Tennessee Supreme Court made it a larger injustice again, reinstating $13,367,345 of punitive damages over a good-faith dispute." Tennessee Supreme Court reinstates punitive damages in Flax v. DaimlerChrysler by Ted Frank on July 24, 2008.

[22] CARSON CREEK RESORTS v. DEPT. OF REVENUE, 865 S.W.2d 1 (1993), Supreme Court of Tennessee, at Knoxville. October 25, 1993. *Austin,* supra at 148, quoting *Heiskell v. Lowe,* 126 Tenn. 475, 499, 153 S.W. 284, 290 (1912).

188.  Respectfully submitted, this _____ 10 -3 - 13

_James T. Higdon_ Pro se

James T. Higdon, Pro se, Plaintiff
522 Mountain Perkins Lane
Jacksboro, Tennessee 37757
Email: nball0792@me.com
Ph: (423) 871-0278

# AFFIDAVIT

I, JAMES T. HIGDON, SWEAR AND / OR AFFIRM THAT ALL OF THE FACTS STATED IN THIS

COMPLAINT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

_James T. Higdon, Pro Se_

Signature of PLAINTIFF, PRO SE

_____James T. Higdon_____.

Print Name of PLAINTIFF, PRO SE

Sworn to and subscribed before me

This the _3rd_ day of _October_ 2013.

_Gary W. Petree_

Signature of Notary Public    Exp 4-12-15

_Gary W. Petree_

Printed name of Notary Public