UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESEE
AT KNOXVILLE

| JAMES T. HIGDON, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| v. | ) | Case No.: 3:13-CV-586-PLR-CCS |
| STATE OF TENNESSEE, et al., | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

Plaintiff, James T. Higdon ("Mr. Higdon") appearing *pro se*, has filed a host of allegations against thirty-seven defendants. Mr. Higdon's forty-three page complaint offers a narrative of events that occurred between 2002 and 2013 in which he contends he was victimized by government officials and the criminal justice system in some sort of conspiracy against him.

Mr. Higdon filed this complaint under 42 U.S.C. § 1983, state common law, and various other alleged causes of action.[1] Mr. Higdon seeks compensatory and punitive damages, declaratory judgment, and injunctive relief. Currently pending before the court are motions to dismiss filed by all defendants. [Docs. 6, 26,17, 32, 34, 29, 24, 36]. Because the facts cannot be compiled into a single cohesive narrative, the facts relating to each defendant will be discussed individually.

### I. Motions to Strike

As a preliminary matter, Mr. Higdon has filed two identical motions, [Docs. 46, 75], to strike certain passages from some of the defendants' Memorandum in Support of their Motion to

---

[1] Mr. Higdon's other causes of action include civil and criminal conspiracy, fraud upon the court, perverting the course of justice, false arrest, racketeering, breach of good faith, aggravated assault and various constitutional claims.

1

Dismiss. [Doc. 37]. The Court has reviewed Mr. Higdon's motions to strike as well as the associated portions of the memorandum he seeks to strike. Because the Court need not rely on the passages Mr. Higdon seeks to strike in ruling on the various motions to dismiss, it need not render an opinion on these motions and they are denied as moot.

## II. Standard for Rule 12(b)(6) Dismissal

Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure require the complaint to articulate a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requirement is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A motion to dismiss under Rule 12(b)(6) requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of the plaintiff's claims that would entitle the plaintiff to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir. 1990) *cert. denied,* 498 U.S. 867 (1990).

The court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

## III. Discussion

### A. Claims against 911 Operator Kamille Bond

#### i. Facts

On June 21, 2013 Mr. Higdon approached Kamille Bond, an E-911 operator for Campbell County, Tennessee, and demanded she turn over copies of audio recordings from incidents that allegedly took place at Mr. Higdon's home on May 28 and July 22, 2013. Ms. Bond refused to turn over the recordings, citing an ongoing investigation by the District Attorney's Office for the Eighth Judicial District of Tennessee. Mr. Higdon contends Ms. Bond's refusal to turn over the audio recordings has caused him "pain, suffering, stress, loss of health and income, and no access to discovery." Kamille Bond has moved to dismiss for lack of federal subject matter jurisdiction.

#### ii. Analysis

Federal courts may only hear cases or controversies over which they have subject matter jurisdiction. "The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. §1331, which provides for '[f]ederal-question' jurisdiction, and §1332, which provides for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). Federal question jurisdiction exists when a plaintiff pleads a claim arising under the laws or constitution of the United States. *Id.* Diversity of citizenship jurisdiction exists when a plaintiff pleads a claim involving parties of diverse citizenship and meeting the required jurisdictional amount in controversy. *Id.* Mr. Higdon's claim against Kamille Bond fails on both grounds.

Ms. Bond's refusal to turn over copies of the 911 recordings does not create a constitutional violation. There is no constitutional right to examine public records. *See Abernathy v. Whitely,* 838 S.W.2d 211, 214 (Tenn. Ct. App. 1992). Mr. Higdon's sole remedy, if

one exists, would be under the Tennessee Open Records Act. Tenn. Code. Ann. §10-7-505(b). The Tennessee Open Records Act is a state law that does not arise under the laws or constitution of the United States. Accordingly, federal question jurisdiction does not exist for the Court to hear this claim. Additionally, diversity of citizenship jurisdiction is lacking because Mr. Higdon and Ms. Bond are both citizens of the State of Tennessee. Because Mr. Higdon's claim against Kamille Bond lacks federal subject matter jurisdiction, it is **DISMISSED** pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### B. Claims against the State of Tennessee, Tennessee Wildlife Resources Agency, and Tennessee Wildlife Resource Officer Brent Harrison.

#### i. Facts

On June 27, 2004 Officer Bret Harrison of the Tennessee Wildlife Resources Agency cited Mr. Higdon for littering and possession of alcohol in a state access area. Mr. Higdon contends while he was standing in knee deep water helping his brother load a jet ski onto its trailer, a wayward beer can floated by him. Mr. Higdon retrieved the beer can and threw it onto the bank, supposedly intending to dispose of it once he exited the water.

Officer Bret Harrison, of the Tennessee Wildlife Resources Agency, saw the incident differently and issued Mr. Higdon citations for littering and possession of alcohol in a state access area. Mr. Higdon refused to sign the citations, stating that the charges amounted to "pure harassment" and a "breakdown of our justice system." Mr. Higdon's contends the case was dismissed in general sessions court and brought back in a sealed indictment before a grand jury. Mr. Higdon brought this 42 U.S.C. § 1983 action alleging his Fourth Amendment rights were violated. The State of Tennessee, Tennessee Wildlife Resources Agency and Officer Harrison moved to dismiss Mr. Higdon's claims on statute of limitations grounds.

4

### ii. Analysis

Mr. Higdon's claims against the State of Tennessee, Tennessee Wildlife Resources Agency, and Officer Harrison are barred by the statute of limitations. The United States Supreme Court has held, "in all actions brought under § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries is to be applied." *Berndt v. State of Tenn.*, 796 F.2d 879, 883 (6th Cir. 1986) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). The Tennessee statute of limitations for personal injury is governed by Tenn. Code Ann. § 28-3-104(a), which states, "[t]he following actions shall be commenced within one (1) year after the cause of action accrued: [a]ctions for libel, for injuries to the person, false imprisonment, [and] malicious prosecution." Assuming Mr. Higdon's claim against these defendants is for malicious prosecution, he had one year from the date the claim accrued to bring his cause of action. Because the events giving rise to Mr. Higdon's claims against the State of Tennessee, the Tennessee Wildlife Resources Agency, and Officer Harrison occurred in 2004, Mr. Higdon's claims filed in 2013 are time-barred.

Mr. Higdon contends the statute of limitations is not applicable due to the continuing violation doctrine; however, this argument is misplaced. The continuing violation doctrine applies when "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiff accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009). Because Mr. Higdon has sued these defendants for a single isolated incident that occurred in 2004, and the actions do not constitute continuous wrongful conduct or a continuous injury, the continuing violation doctrine is inapplicable. For the above stated reasons,

5

Mr. Higdon's claims against the State of Tennessee, Tennessee Wildlife Resources Agency, and Officer Brent Harrison are **DISMISSED.**

### C. Claims against the City of Caryville, Fred Stagnolia, Bill Widener, the City of LaFollette, Joel Clark, the City of Jacksboro, Danny Chapman, Shannon Marlow, Shane Green, and James Skeans.

#### i. Facts

Mr. Higdon asserts a host of sparse and confusing allegations against these defendants. The common denominator in this collection of claims is the fact that all of the allegations against these defendants arose as a result of a fire at the Eagle Market in Jacksboro, Tennessee on March 19, 2003.[2] Mr. Higdon has placed all claims against these defendants under his second cause of action, which he has listed as a 42 U.S.C. § 1983 claim.[3]

Mr. Higdon, who owns the Eagle Market, prefaces his description of the Eagle Market fire by asserting perhaps the firefighters were not as prepared as they could have been because they had not attended an optional state certification class. Mr. Higdon then describes the events that occurred during the Eagle Market fire. After one of the firefighters removed Mr. Higdon from the burning building (unlawfully he claims), an unnamed person[4] attempted to enter the rear of the burning building. When the unnamed person was denied access to the burning building he proceeded to assault several firefighters, sending one of them to the hospital. The

---

[2] The only exception to the Eagle Market fire allegations occurs at ¶96 of the complaint. At ¶96 Mr. Higdon makes reference to a 2005 MySpace posting by Shannon Marlow regarding Mr. Marlow's agnostic beliefs. It is unclear what the allegation against Mr. Marlow is. Nevertheless, the claim is time-barred.

[3] Mr. Higdon has also listed, within his second cause of action, violations of 28 U.S.C. §§ 1931, 1943, 1367, as well as violations of the Fourth and Fourteenth Amendments via conspiracy, racketeering, dereliction of duties, and good faith tort. Mr. Higdon does not substantiate these claims, and though, as a general rule, *pro se*, pleadings are liberally construed, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). Moreover, the Court "should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court considers these allegations as 42 U.S.C. § 1983 claims.

[4] Mr. Higdon refers to the unnamed person as "defendant" but the Court is unable to discern why. If Mr. Higdon is referencing one of the many defendants in this matter the Court has no way of knowing which one.

6

unnamed person was eventually handcuffed, though not before trying to hit Mr. Higdon and striking Officer Stagnolia.

Following this incident, Mr. Higdon urged the remaining fire fighters to turn their attention toward battling the ongoing fire. Instead of heeding Mr. Higdon's pleas, several fire fighters became embroiled in their own altercation. Mr. Higdon assisted Officer Stagnolia in subduing and eventually handcuffing one of the fire fighters. Mr. Higdon faced criminal charges from the events that transpired at the Eagle Market fire, though he denies any wrongdoing.

The City of Caryville, Fred Stagnolia, Bill Widener, the City of LaFollette, Joel Clark, the City of Jacksboro, Danny Chapman, Shannon Marlow, Shane Green, and James Skeans have moved to dismiss Mr. Higdon's claims based on the Tennessee statute of limitations.

    ii. **Analysis**

Mr. Higdon's claims against these defendants are all time-barred. Although the allegations are, at best, confusing, the Court, relying on Mr. Higdon's complaint describing the events that transpired at the Eagle Market fire, assumes Mr. Higdon has sued these defendants for either malicious prosecution or personal injury. Either way, Mr. Higdon had one year from the time his cause of action accrued to bring a claim. He failed to do so.

The Tennessee statute of limitations for malicious prosecution and for personal injury is one year. Tenn. Code Ann. § 28-3-104(a). As far as the Court can discern, Mr. Higdon's claims against these defendants relate to the defendants' presence at or involvement with the Eagle Market fire in Jacksboro, Tennessee on March 19, 2003. Because Mr. Higdon did not file his complaint until 2013, his claims against these defendants are clearly barred by the one year statute of limitations. Accordingly, the claims against the City of Caryville, Fred Stagnolia, Bill

7

Widener, the City of LaFollette, Joel Clark, the City of Jacksboro, Danny Chapman, Shannon Marlow, Shane Green, and James Skeans, are **DISMISSED**.

**D. Claims against Michael Glen Hatmaker.**

  **i. Facts**

Michael Glen Hatmaker is Mr. Higdon's former defense attorney. Mr. Higdon refers to Mr. Hatmaker sporadically throughout his lengthy complaint; however, it is unclear what, if any, misconduct or wrongdoing Mr. Higdon alleges against Mr. Hatmaker. The first mention of Mr. Hatmaker occurs at paragraph 57 of the complaint where Mr. Higdon describes aspects of Mr. Hatmaker's representation of him in the criminal matter stemming from the 2003 Eagle Market fire. Mr. Higdon does not allege any wrongdoing against Mr. Hatmaker from that particular matter.

Next, Mr. Higdon references Mr. Hatmaker in paragraphs 80-81 of his complaint. Mr. Higdon states that, following an alleged event in 2004 where several police officer assaulted him, he went to see Mr. Hatmaker in an attempt to sue the Sheriff's Department of Campbell County. Mr. Hatmaker allegedly spoke with the Sheriff's department and advised Mr. Higdon that all charges against him would be dropped if he chose not to sue the Sheriff's Department. Mr. Higdon took Mr. Hatmaker's advice and opted not to sue. Once again, Mr. Higdon's narrative fails to allege any wrongdoing by Mr. Hatmaker.

Finally, in paragraphs 107-112 Mr. Higdon describes Mr. Hatmaker's representation of him regarding another criminal matter. The representation occurred between January 16, 2007 and September 10, 2011. Mr. Higdon once again does not specifically allege any wrongdoing. Nonetheless, the narrative contained within paragraphs 107-112, if considered in the light most favorable to Mr. Higdon, could be interpreted as allegations of legal malpractice. Mr. Hatmaker

8

has moved to dismiss based on the one year Tennessee statute of limitations for legal malpractice.

### ii. Analysis

Mr. Higdon's claims against Mr. Hatmaker are also time-barred. Tennessee law provides for a one year statute of limitations for actions against attorneys for malpractice. Tenn. Code Ann. §28-3-104(c)(1). Throughout the course of Mr. Higdon's forty-three page complaint he makes sporadic references regarding the conduct of Mr. Hatmaker who appears to have represented Mr. Higdon in several previous criminal matters. Specifically, Mr. Higdon references Mr. Hatmaker's involvement in incidents occurring in 2003, 2004, 2007, and 2011. To the extent Mr. Higdon is asserting a legal malpractice claim relating to any of these incidents, his claim is time-barred because all of these events took place more than one year before the date of his filing. Accordingly, the claims against Michael Glen Hatmaker are **DISMISSED.**

### E. Claims against the District Attorney's Office for the Eighth Judicial District, William Paul Phillips, Lori Phillips-Jones, and Scarlett Ellis.

### i. Facts

Mr. Higdon contends William Paul Phillips, Lori Phillips-Jones, and Scarlett Ellis, as well as the Eighth Judicial District of Tennessee, have conspired with the grand jury foreperson and the Sheriff's Department in a coordinated attempt to harass him. Mr. Higdon makes numerous references throughout his complaint to what he deems to be unfair prosecution.

Mr. Higdon's conspiracy allegations against the District Attorney's Office for the Eighth Judicial District begin at paragraph 50, where Mr. Higdon states that William Paul Phillips is a friend of the grand jury foreperson Harry Burden. He further alleges their relationship is for the "personal benefit of each other." [Doc. ¶ 50]. Mr. Higdon goes on to state that he approached the

9

District Attorney's office of Campbell County "verbally, with letters, and fliers'[sic] asking him to do his job."

Next, Mr. Higdon references an amended discovery request made by Scarlett Ellis regarding criminal proceedings that occurred as a result of the March 19, 2003 Eagle Market Fire. Later, Mr. Higdon cites a letter from Scarlett Ellis to Judge Richard Baumgartner regarding amending a 2007 indictment, and a reference is made regarding Mr. Higdon being charged with two counts of DUI in 2007. Finally, Mr. Higdon finishes his complaint against these four defendants by discussing a 2008 letter that his former defense attorney Michael Hatmaker sent to Judge Richard Baumgartner asking for the case to be reassigned to a different district attorney's office due to a potential conflict of interest. The District Attorney's Office for the Eighth Judicial District, William Paul Phillips, Lori Phillips-Jones, and Scarlett Ellis have moved to dismiss Mr. Higdon's claims on statute of limitation grounds.

### ii. Analysis

Mr. Higdon's claims against the District Attorney's Office for the Eighth Judicial District of Tennessee, William Paul Phillips, Lori Phillips-Jones, and Scarlett Ellis are barred by the statute of limitations. Tennessee's statute of limitations for malicious prosecution causes of action brought under § 1983 is one year. Tenn. Code Ann. § 28-3-104(a). Mr. Higdon's complaint makes erratic references to numerous criminal prosecutions that occurred between 2003 and 2012, and references charges stemming from the Eagle Market fire in 2003, littering and alcohol citations in 2004, and DUI charges in 2006 and 2007. All of these events fall outside the applicable one year statute of limitations.

The central thesis of Mr. Higdon's allegations is that the above listed defendants conspired with the police to maliciously prosecute or to falsely imprison Mr. Higdon on a host of

different occasions. Nonetheless, all assertions Mr. Higdon has made against these defendants relate to events that occurred outside the applicable one year statute of limitations and are therefore time-barred. *See* Tenn. Code Ann. § 28-3-104(a)(1). Accordingly, the claims against the District Attorney's Office for the Eighth Judicial District, William Paul Phillips, Lori Phillips-Jones, and Scarlett Ellis are **DISMISSED**.

### F. Claims against Billy Marlow and Verlin Hatfield.

#### i. Facts

Mr. Higdon's claims against Billy Marlow and Verlin Hatfield stem from a 2004 arrest on suspicion of DUI. Mr. Higdon contends in the early morning hours of May 26, 2004 he was falsely arrested for DUI without being read his Miranda rights. Upon being taken to the Campbell County Jail, Mr. Higdon alleges he was violently assaulted by Officers Billy Marlow and Verlin Hatfield for refusing to sign a police form. He contends he was hit in the face with leaded gloves and pepper sprayed while he was lying on the ground. Following the incident, Mr. Higdon claims he initially elected not to sue the Campbell County Sheriff's Department based on the advice of his counsel. Officers Marlow and Hatfield have moved to dismiss Mr. Higdon's complaint against them on statute of limitations grounds.

#### ii. Analysis

Regardless of their merit, Mr. Higdon's § 1983 claims against Billy Marlow and Verlin Hatfield are barred by Tennessee's one year statute of limitations. Mr. Higdon's claims stem from an alleged police brutality incident that occurred in 2004. Accordingly, they are barred by the one year statute of limitations for §1983 personal injury claims. *See* Tenn. Code Ann. § 28-3-104(a). The claims against Billy Marlow and Verlin Hatfield are **DISMISSED**.

### G. Claims against Sheriff Robbie Goins.

#### i. Facts

Mr. Higdon asserts on May 28, 2013 Campbell County Sheriff's deputies entered his home without permission. Mr. Higdon does not allege Sheriff Goins was personally involved in any aspect of these events. As far as the Court can surmise, Mr. Higdon is asserting a claim for some form of supervisory liability. Additionally, Mr. Higdon claims Sheriff Goins refused to give any details or information relating to the Officer's presence at his house.[5] Sheriff Goins has moved to dismiss Mr. Higdon's complaint for failure to state an actionable claim.

#### ii. Analysis

Mr. Higdon's claims against Sheriff Robbie Goins fail as a matter of law. The Sixth-Circuit held that "*respondeat superior* is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (quoting *Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir.2003)). Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *McQueen,* 433 F.3d at 470 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). Mr. Higdon presents no evidence that Sheriff Goins participated in or encouraged any alleged misconduct. Because Mr. Higdon's only claim against Sheriff Goins is in a general supervisory role, it fails as a matter of law, and is **DISMISSED.**

---

[5] Mr. Higdon's claims regarding Sheriff Goins' refusal to produce documents appear to be an improper attempt at discovery rather than a cause of action.

### H. Claims against James McCall, Cory Chapman, Cody Chapman, and Franklin Ayers.

#### i. Facts

Defendants James, McCall, Cory Chapman, and Franklin Ayers' names appear only one time in Mr. Higdon's forty-three page complaint. In paragraph 140 of Mr. Higdon's complaint he asserts that on June 13, 2013 he asked a Campbell County Sheriff's department night clerk for the names of individuals who were involved in an alleged incident that occurred May 28, 2013 at his home. Mr. Higdon claims the night clerk identified James McCall, Cory Chapman, and Franklin Ayers as being present at the May 28, 2013 incident at Mr. Higdon's home. Mr. Higdon does not assert any specific cause of action against these three individuals. He never asserts what they did wrong, nor why he has sued them.

Furthermore, the Court has been unable to find a single mention of Cody Chapman in Mr. Higdon's forty-three page complaint. The court has no way of knowing why Cody Chapman was listed as a defendant in this particular lawsuit or what is being asserted against him. Defendants James McCall, Cory Chapman, Cody Chapman, and Franklin Ayers have moved to dismiss Mr. Higdon's complaint against them based on his failure to state a claim upon which relief can be granted.

#### ii. Analysis

Mr. Higdon fails to state a claim against James McCall, Cory Chapman, Cody Chapman, and Franklin Ayers. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In the absence of such statement, Federal Rule of Civil Procedure 12(b)(6) states that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." *Bihn v. Fifth Third Mortgage Co.*, 3:13-CV-

13

Case 3:13-cv-00586-PLR-CCS   Document 136   Filed 08/12/14   Page 13 of 18   PageID #: 906

00057, 2013 WL 5882063 (S.D. Ohio Oct. 30, 2013)(citing *Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277, 279 (6th Cir.1987)).

It is not enough for Mr. Higdon to simply state in his complaint that a night clerk told him police officers were at his property. He has failed to state why he is suing these defendants, or what they have allegedly done wrong. The simple act of listing the names of individuals within a complaint, without asserting any cause of action against those individuals, cannot survive a 12(b)(6) motion to dismiss. Accordingly, for the reasons stated above, the claims against James McCall, Cory Chapman, Cody Chapman, and Franklin Ayers are **DISMISSED.**

### I. Claims against Harry Burden

#### i. Facts

Mr. Higdon claims Harry Burden, as grand jury foreperson of Campbell County, is responsible for many of the criminal charges brought against him over the past decade. Mr. Higdon contends Mr. Burden voted as the twelfth vote to indict Mr. Higdon in a previous criminal matter, and he has also done so in "numerous indictments . . . from littering to aggravated assault." [Doc. 1 ¶150]. In fact, Mr. Higdon blames Mr. Burden for all the indictments brought against him. He contends Mr. Burden has illegally been grand jury foreman for 39 years. Moreover, Mr. Higdon contends that, because Mr. Burden has known his family for approximately sixty years, any indictment brought against Mr. Higdon by Mr. Burden qualifies as a conflict of interest. Mr. Burden has moved to dismiss the complaint against him by asserting quasi-judicial immunity.

#### ii. Analysis

Harry Burden, acting as grand jury foreperson in Campbell County Tennessee, is entitled to quasi-judicial immunity. The United States Supreme Court has held that the common law

14

principle granting judges, juries, and prosecutors immunity for acts within the scope of their duties is to be extended to grand jurors. *Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976). In *Imbler*, the Supreme Court noted, "[t]he immunity of a judge for acts within his jurisdiction has roots extending to the earliest days of the common law . . . [t]he immunity of grand jurors, an almost equally venerable common-law tenet, . . . also has been adopted in this country. *Id.* at 429 n.20. Moreover, "[i]t is the functional comparability of their judgments to those of the judge that has resulted in both grand jurors and prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed 'quasi-judicial' as well." *Id.* at 423. Thus, Harry Burden, acting within the scope of his grand jury foreperson duties, is entitled to quasi-judicial immunity from civil liability.

All of the accusations against Mr. Burden relate to Mr. Burden's actions as grand jury foreman. Mr. Higdon has essentially asserted that Mr. Burden, by doing his job as grand jury foreman, is liable to him for his various criminal charges. Because all of Mr. Higdon's assertions against Mr. Burden have occurred as a result of Mr. Burden executing his role as grand jury foreperson of Campbell County, Mr. Burden is entitled to quasi-judicial immunity, and Mr. Higdon's claims against him are **DISMISSED.**

### J. Claims against Campbell County Tennessee.

#### i. Facts

Mr. Higdon's claims against Campbell County, Tennessee reflect an overall dissatisfaction with the criminal justice system of that county. Specifically, Mr. Higdon believes many of previously listed defendants, including Sheriff's Deputies, District Attorneys, the Grand Jury Foreman, and numerous other officials have been conspiring against him. Campbell County

has moved to dismiss Mr. Higdon's complaint against it based on failure to state a claim upon which relief can be granted.

### ii. Analysis

Mr. Higdon's civil conspiracy claims against Campbell County Tennessee, fail to state a claim upon which relief can be granted. Under Tennessee law, a "civil conspiracy" is "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Menuskin v. Williams*, 145 F.3d 755, 770 (6th Cir. 1998) (citing *Braswell v. Carothers,* 863 S.W.2d 722, 727 (Tenn. Ct. App. 1993)). Moreover, "[t]he requisite elements of the cause of action are common design, concert of action, and an overt act. Injury to person or property, resulting in attendant damage, must also exist." *Menuskin v. Williams*, 145 F.3d 755, 770 (6th Cir. 1998) (citing *Braswell v. Carothers,* 863 S.W.2d 722, 727 (Tenn. Ct. App. 1993)). Additionally, civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Hauck Mfg. Co. v. Astec Indus., Inc.,* 375 F.Supp.2d 649, 660 (E.D. Tenn. 2004). Mr. Higdon's complaint fails to meet the necessary elements for a civil conspiracy against Campbell County, Tennessee.

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC,* 461 F.Supp.2d 629, 642–43 (M.D. Tenn. 2006). In support of his conspiracy claim, Mr. Higdon lists numerous criminal proceedings brought against him between 2002 and 2013. Mr. Higdon believes these charges, ranging from littering, to DUI, to assault, are all part of a broad based conspiracy against him by numerous employees of various Campbell County departments; however, Mr. Higdon has failed to assert any of the necessary elements for a civil conspiracy.

16

He has not shown (1) common design, (2) concert of action, or (3) an overt act resulting in injury to a person. Specifically, Mr. Higdon has not asserted how any of the charges against him are in any way the product of a conspiracy. He has not pled how any of the defendants acted in concert to commit an unlawful act, or how there was any type of common plan to conspire against him. Mr. Higdon's conspiracy allegations fail as a matter of law. Accordingly, the claims against Campbell County are **DISMISSED.**

### K. Claims against unnamed John/Jane Doe Defendants

The Court concludes that all claims brought against unnamed Campbell County Sheriff's Department officials and Campbell County employees must be dismissed. Mr. Higdon has not made a timely Federal Rule of Civil Procedure 15(a) motion to amend his complaint to correctly identify the John and Jane Does by their legal names, nor has he timely effected service on the individual John and Jane Doe defendants as required by Federal Rule of Civil Procedure 4(m).

Federal Rule of Civil Procedure 4(m) states, "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action." Fed. R. Civ. P. 4(m). Mr. Higdon had 120 days from the date he filed his complaint on October 3, 2013 to amend his complaint and to serve the John/Jane Doe defendants with process. He has failed to do so. Accordingly, this action shall be **DISMISSED as to the Jane/John Doe defendants, without prejudice**.

## IV. Conclusion

For the foregoing reasons, it is **ORDERED** that**:**

1) Kamille Bond's motion to dismiss, [Doc. 6], is **GRANTED**;

2) The State of Tennessee, Tennessee Wildlife Resources Agency, and Officer Brent Harrisons' joint motion to dismiss, [Doc. 26], is **GRANTED**;

17

3) The City of Caryville, Fred Stagnolia, and Bill Wideners' joint motion to dismiss, [Doc. 17], is **GRANTED**;

4) The City of LaFollette and Joel Clarks' joint motion to dismiss, [Doc 32], is **GRANTED**;

5) The City of Jacksboro, Danny Chapman, Shannon Marlow, Shane Green, and James Skeans' joint motion to dismiss, [Doc. 34], is **GRANTED**;

6) Michael Glen Hatmaker's motion to dismiss, [Doc. 29], is **GRANTED**;

7) The District Attorney's Office for the Eighth Judicial District, William Paul Phillips, Lori Phillips-Jones, and Scarlett Ellis' joint motion to dismiss, [Doc. 24], is **GRANTED**;

8) Harry Burden, Campbell County Tennessee, Robbie Goins, James McCall, Cory Chapman, Cody Chapman, Franklin Ayers, Billy Marlow, and Verlin Hatfields' joint motion to dismiss, [Doc. 36], is **GRANTED**.

9) The complaint brought against the unnamed John Doe and Jane Doe defendants is **DISMISSED** without prejudice.

10) Finally, the Court finds Mr. Higdon's Motions to Strike, [Doc 46, 75], are moot. They are therefore **DISMISSED**.

_____
**UNITED STATES DISTRICT JUDGE**

18

Case 3:13-cv-00586-PLR-CCS   Document 136   Filed 08/12/14   Page 18 of 18   PageID #: 911